Thank you, Your Honor. My name is Glenn Zwang and I'm here for the 1996 bondholders. At the heart of the case are these four pre-petition or pre-application pre-insurance letters. Okay, now let me make sure I understand your posture in the case. You are not really suing in your own right, but you're the assinees from the officers and directors? Correct. Yeah. I'm not trying to take care of you, except as I might be trying to take care of the officers and directors? Correct. Okay, got it. The officers and directors are obviously very interested parties here as well, because the insurance company paid out a substantial sum of money to defend them. And if the insurance company has no coverage, then the officers and directors will have to repay that money as well. So yes, I represent the bondholders to whom the policy settlement agreement that involves both the officers and directors and the insurers. Are you also representing the officers and directors in this suit? No. The officers and directors are no longer parties to the suit. So they're out of here, even though they may be affected by our judgment? Correct. Okay. Under the settlement agreement, which is in the record, what was agreed to was that the policy rights would be assigned to the bondholders, would defend the coverage action, and that there would be whatever the terms of the settlement are, but whatever happens here is going to affect both the bondholders and the officers and directors. Okay, I got it. Thank you. Okay. So we're talking about these four pre-policy letters and whether they constitute or one or more constitute a claim as defined either under the policy or under the policy application. And those definitions are slightly different, but they're effectively the same. If it's a claim as defined in the policy, which includes a demand for monetary or non-monetary relief based upon a covered loss, then the policy doesn't apply because it's a claims-made policy, and it only applies to claims that are first made during the policy period. If it's a claim, and we're also talking about the policy application, required the insured to report all existing claims that arose in the previous policy year. Well, you know, you're using the word claim. The key thing, as I understand it, is question number 24, and the question includes, in the last five years, has any officer or director, quote, received any other written demands for money or services? So the question is whether or not any of these letters is a written demand for money or services and whether it's material to the issuance of the policy. Correct. And the term really isn't claim. The term is the language I just read to you out of question 24. Well, the language that you read under question 24 is under the application part called claim and litigation information. Right. It's the part of the application that's requesting that the insured report prior claims. Now, it has a different definition. It says, instead of saying demand for monetary or non-monetary relief, it says demand for money or services. And, yes, that's the definition that we're dealing with. But it's just a different definition of a claim. Right. But our ordinary definition of a claim, for example, as a cause of action or whatever, there's not at all limited to that. Correct. In fact, both the policy and the question 24 itself talk about it could be a civil action, it could be a non-claim, it could be a claim for other written demand for money or services. So, in essence, you can have a letter that puts you on notice that someone is making a claim against you. It doesn't have to be a lawsuit. But it's more or less the equivalent of a lawsuit. There's something that's covered by your policy. And that's another key point here. It's not just any demand for money or services. It's a demand for money or services for a loss that's covered by the policy. For example, a demand for money. We, the creditor, we creditor of Sonic Blue demand money is not covered. Why? Because Sonic Blue owes them money. Sonic Blue is a contract debtor. So, a demand that Sonic Blue simply pay money on its contract debt is not a claim. In fact, that's this court's holding in the Strauss case where the, under similar circumstances, a creditor said, we demand that the company pay us. And rattled the fiduciary duty saber, just like the 2002 lenders, rattled the fiduciary duty saber here. And this court said, rattling the fiduciary duty saber is irrelevant. That's what this court also said in the Winkler case. And what really matters is the nature of the demand. And the demand in that case was for money, but from the company to pay a debt. So, the question here is, what is the nature of the demand? Is it a demand for money or services relating to a covered loss under this policy? You know, I don't read the language for a covered loss in question 24. Well, it doesn't say covered loss in question 24, but under the Strauss case, which is this court's opinion fairly recently, the court says that's assumed. That you're only talking about a demand for money against an officer and director personally that would be covered by the insurance. That's a case where there was a demand for money from the company on the contract debt. So, that's implicit in the question. Are there any claims against the officers and directors personally for money? It's not asking whether they didn't pay their utility bills. Well, I understand that. I mean, that's clearly within question 24. Have any of the officers, have any of the directors and officers only been named? So, I mean, it's clear that question 24 is directed to demands made to the officers and directors. I got that part. For money. And we'll come back to services, but let's just talk about money. It's not utility bills. It's demands for money from services. There is a California case, one California case, that talks about a demand for services being covered and a covered claim. And that's the legal malpractice case where the attorney misfiled a mechanic's lien. And the client said, demanded that the attorney fix it. The attorney didn't report it to the carrier, didn't fix it. The client later sued. The carrier said, you received a demand for a covered demand for services when the client demanded that you fix the mechanic's lien. And the court said, that's right. You should have reported the claim at that point because the client was demanding that you do something personally, that you personally fix the problem so that the client didn't suffer a loss. So it's akin to demanding money. Instead of demanding compensation in the form of money to compensate for a loss, it's demanding that particular case a service in the form of fixing the problem so that the loss goes away that way. I suppose in the abstract the service can be a lot of things. It could be compensating for the loss in some other way. But what we're talking about here is a demand personally to the officers and directors to compensate a loss. And even on that description of what Question 24 asks, help me understand how the November 14, 2002 letter, the one that proved critical to Judge Fogle, doesn't qualify. Well, let's take a look at what the November 14 letter is demanding. The November 14 letter is written by senior creditors that are ahead of the 1996 bondholders in line. And they see the company losing money. They see the stock price dropping. And they're concerned that the company is running up red ink and that their position in a liquidation is being stopped doing the thing. We want the company to stop doing the thing, which is running consumer electronic businesses, that's causing it the red ink. And they also want them to quit liquidating those UMC shares. Correct. They're saying stop selling your assets and stop losing money. And that is squarely under the Abifidel case, which is the leading California case. The Abifidel case is a cease and desist case, just like the November 14 letter. The November 14 letter is essentially saying cease and desist from doing these bad things that are causing us potentially, potentially to lose money. Remember, the 2002 lenders never claimed that they lost money. They never filed a lawsuit. This is stop doing the thing that we think is causing the company damage, and we may lose because of it. Abifidel is a cease and desist order case. This is a case where banking officers were accused of mismanagement and misappropriation of money. They received a cease and desist order from the banking department in California and from creditors who demanded that they stop doing what they were doing. And the court said that's not a claim. And the court specifically uses the word. It's not a demand for money or services. Let me ask you a question, Counselor. I read the question, and when I read the question, and I read the letters that had come in prior to the question, I said to myself, how could any good lawyer suggest to the directors and officers that they ought not tell what had already happened? Are you suggesting to me that every officer and director who gets a letter from an insurance company like this should read every case that has been written prior to that question to determine what the question means? No. Well, aren't you doing that with your argument? No. It seems to me that you're even suggesting cases that have been written since that letter came to the officers and directors. And I guess my whole theory about this is this. If I look at the word demand, and I look at what demand means, whether it means something in the Black's Law Dictionary 6th, whether it means whatever, I'm having a tough time understanding after receiving these letters, and I could go through what I saw in the letters, but I don't think that's important, how one could say one has been truthful by not suggesting that it is yes rather than no. And this is what the judge said. Yes. He said, these are written communications demanding a course of action based on some legal rights. Correct. And he said, these are demands for specific action based upon legal rights as creditors to whom the officers and directors own a fiduciary duty. That's what he said. Yes. And he said, therefore, done. Right. But he missed the crucial step. The crucial step is, is this a demand? For money? No. Let's just talk about who it's a demand to. Okay. And Judge Fletcher just raised the point. Is it a demand to the officers and directors only? For, or? So you're suggesting who the letter is written to makes a difference? No. It's what the. Are you suggesting that because one goes to the general counsel and one doesn't, that makes a difference? No. Okay. Then I guess I'm still having a tough time if I'm an officer, a director of that company, to suggest when I saw these letters that they demand, given the dictionary definition or the Black's Law dictionary definition, that they shouldn't have said yes. Okay. They demand that the company, Sonic Blue, change its course of operating. The 2002 lenders demand that Sonic Blue cease and desist from doing what it's doing. They certainly rattle the fiduciary duty saber. But as this court has said in Winkler and countless other courts have said, and it's well established, simply making a threat of litigation is not a claim. Okay. It's not a demand for, it's not a demand that would come under this particular application. It's simply rattling the saber. What they're asking for is that the companies, the 2002 lenders in particular, they're asking that the company stop doing something so that it can pay its contract debt. Is there any significance to this idea that those who were the officers and directors thereafter sued their lawyers and said, boys, you should have told us to put yes, and they settled for $7.5 million? Well, that's factually inaccurate. Well, I don't know. That's what I read. Right. They didn't sue their lawyers. Is there any significance to that? No. They didn't. Number one, they didn't sue their lawyers. The bankruptcy trustee sued the lawyers. All right. Well, okay. And it's a different dynamic, number one. I understand. Number two, I don't know if this court has had any experience in the Sonic Blue bankruptcy in San Francisco, but this is sort of an infamous bankruptcy in San Francisco where a very prominent law firm, Pillsbury, Madison & Sutro, failed to make disclosures to the court before it took on the position of debtor's counsel. And there was a mammoth lawsuit by the bankruptcy trustee against Pillsbury for all sorts of things, mostly to recover over $10 million of legal fees that were paid by Pillsbury. And there was a settlement of that case. And what you're seeing is not in terms of that case. You're seeing the bankruptcy trustee exercising... I've been in your spot before where I had behind me some settlements, and I expected you to say, well, even the settlement document said there was no liability. But the only thing that I'm trying to look at here is we're trying to interpret a particular phrase in this contract... Correct. ...based on what does it mean. Correct. And it isn't in the contract what it means. It isn't exactly there what it means. So I'm saying to myself, in those situations, am I supposed to embrace that everybody who answers this question must look at every legal case prior to that question and make sure what that is, or, as the good judge did in the district court, am I to look at definitions that are normal in answering questions like this? Because it seems undisputed in this record that the fact the question was done the way it was made a difference to whether they'd insure or not. Well... That's undisputed. There's only one record, and that's their record, and as I understand California law, what they would do on that particular instance is what the test is. It's not uncommon for an insurer to come back after the fact and say, oh, if only I had this, I would have made a different decision. The question of materiality here, we don't contest the fact that if it was requested in the application, it's material. Yeah. And if it's not requested, there's no obligation to provide it. That's basically the way it works. So the real question is, as I think Your Honor just put it, is, is there an obligation to provide the information? And I think it boils down not just to whether a demand was made, but to analyze the demand that's made and ask, is this a demand within Question 24? Is it a demand to the officers and directors for money or services? Or... Can I ask you this just to make sure? You're not questioning that it's a demand to the I'm sorry. I think you're not questioning whether it's a demand to the officers and directors within the meaning of 24. Or are you? I'm suggesting that 24 wasn't to the officers and directors. No. 24 is to the officers and directors. And I'm not questioning that the letter, no matter who it's addressed to, is received by the officers and directors. The officers and directors part of Question 24 is satisfied. So the question is, what is demanded? Correct. Okay. I got it. Sorry. I didn't mean to interrupt, but I want to make sure. I thought that's good. What is demanded and from whom? Are you making a demand for money or services to the officers and directors? Or are you making another kind of demand to the company? Oh, but that was my question. I thought you just said that it's to the officers and directors regardless. No, that's and that's where I differ. Well, you know, that's what you just said. I misunderstood the question. I'm sorry. But if your answer is, this doesn't come within 24 because it's a demand to the officers and directors and to the company, and therefore doesn't come within the scope of Question 24, then you've got problems under Question 19. No, that's not it. Because that question asks demand to the officers and directors and the company. Well, that's it. You check yes, but then what you reveal under yes isn't these letters. That's why it's not that it's not that it doesn't it's not that it doesn't pertain to the officers and directors. OK, they're certainly rattling the fiduciary duty saber in this particular letter. And if I'm an officer and director, what I see is they're rattling the fiduciary duty saber. They're accusing me of wrongdoing. But what are they demanding of the officer and director in the letter? That's the question, isn't it? It's what it's not what you're demanding of the company. It's what you're demanding of the officer and director. In my book, agreeing with my colleague, I guess, at least to the extent of his question, because I don't know where he is. But to the extent of his question, after they answered Question 19, question that they were looking at couldn't be to anybody but the officers and directors. That's all it was about, because after you've answered 19, you're through with that company, general counsel, something else. No, yes. But what I'm saying, excuse me. What I'm saying is that while the while Question 24 is asking for a demand that a demand made to officers and directors. That is, Mr. Officer, Mr. Director, you've committed a wrongful act. We've lost money. Pay us money out of your pocket. That's what Question 24 is about. These letters are about something else. In terms of the officers and directors, what they're saying. Off the word services. Okay. Never hit that yet. Let's talk about services. Pay over, but you never have hit services. Let's talk about services, if I may. What is it they're asking the officers and directors to do? They're asking the officers and directors to behave like officer in what would be in their opinion like officers and directors in compliance with their fiduciary duties. They're saying, Mr. Officer and Mr. Director, we think that in order to perform your obligation as fiduciaries, you have to do X. And when you do X, that will maximize the value of the company. The only thing that they're demanding of the officers and directors is that they perform their duties as officers and directors. That's it. And in terms of, and again, what is the goal of their performing their duties as officers and directors? The point of performing your duties is to put the company in a position to pay its contract debt. That's this court's decision in Strauss. And that seems to me when they say, would you get out of this money losing consumer electronic business and would you quit selling off the shares in that Japanese company which seems to be your only asset? That strikes me as they're asking for a service. Well, the question is, are they asking for a service under this question 24? What they're asking for is that they perform as officers and directors. Are they asking something beyond that? Are they asking for something personally from them? Remember, the, the, the, you know, I think we've got your point in the hand. We've taken you eight minutes, 23 seconds over. Let's hear from the other side. I was hoping to get a minute. May I have one question? Just one. The November 14 letter. Yes. Now that letter alleges ongoing breaches of fiduciary duties. Yes. Notes that the company's ability to make creditors whole is rapidly diminishing. Yes. And asked that the company cease all self-sustaining operations. Now, why isn't this a demand? It is a demand. The question, is it a demand to the officers and directors for money or services? It's certainly making a demand. No question about it. The question is, what kind of demand is it making and to whom and to do what? The demand on the officers and directors is to perform their duties as officers and directors. It's not a demand saying we've suffered a loss by way of your wrongful conduct. We want you to compensate us or we want you to perform a service that's either going to compensate us or mitigate the loss. That's not what the demand is. It's not that it's not a demand. There's no question that these letters are making demands. And in response to Judge Smith's earlier question, which is why would anybody who's right mind not, you know, make this claim to the insurance company? All of these policies have potential claims or threatened claims coverage. The insured can and most insureds would. Undoubtedly, all lawyers that I know do when they get letters like this, they notify their carrier and they say, I have a potential claim here. Because they have coverage if that potential claim someday leads to an actual claim. And the insured had that coverage here. It had it in the prior policy. But that's a different question. It's a different question than whether they truthfully answered whether they had a demand to the officers and directors for money or services within the meaning of a insurance of a director's and officer's liability insurance application. And Judge Mills, did you have further questions at this time? No. Okay. That's enough for now. Thank you, Your Honor. And we've taken you well over, but we won't charge you for that. And we'll let you give, we'll give you a chance to respond. Thank you. Thank you. Good morning, Your Honors. I may have pleased the court. Melissa Murphy-Petros on behalf of Admiral Insurance Company. I would like to return to Judge Mills' question with respect to the November 14, 2002 letter. And of course, it's Admiral's position that all of the pre-policy letters are demands that should have been disclosed. But the district court focused particularly on that letter, as did Your Honor. The letter is a demand. It's a demand against the directors and officers. And it is a demand for both money and services. Although I would note that question number 24 uses the word are, written or, excuse me, written demand for money or services. But when we look at, I'm sorry, at the November 14 letter, we see clearly that the authors are asking for services from the directors and officers. They're saying, stop selling the UNC stock. Stop all non-self-sustaining operations. Engage in meaningful discussions with all of your creditors regarding how you're going to get out of this mess. Pursue and develop a reasonable resolution to all of your financial, all of the companies financial woes. They're asking the directors and officers to do these things. These are services. The author of the 1114 letter is also asking for money. They're saying, directors and officers, you're allowing the continued sale of UNC stock supports a claim by us for damages. That's money. We will hold the company and you liable. It says, hold the company's officers and directors, excuse me, responsible for the full value of all UNC shares that have been sold and that if you continue to sell, that you do sell. They also say to the directors and the officers, your conduct, which breaches a fiduciary duty to us, supports a claim for damages, all damages incurred by us as a result of Sonic Blue's financial situation and deepening insolvency. I don't see, as Judge Smith pointed out, how this could really be more clear that the authors are making these demands of the directors and officers individually. And the author, although the letter was addressed to general counsel, to drive the point home, at the end of the letter says, we're demanding you, general counsel, to copy all of the directors and officers on this letter immediately. When you look at the contents of that letter, it was the fifth letter that had been received within the previous six months, complaining about the April 2002 emergency debt placement and all of the financial implications that derived from that. They're in the middle of the policy application process. They tell Admiral in November of 2002 that you don't have to worry about us. We've got all this UMC stock. That'll keep us going. Admiral says, yeah, that mitigates our financial concerns. They didn't tell Admiral that they were selling the stock and being roundly criticized for it and threatened with litigation. What is your response to this idea that this isn't a demand for money and services? It's only a demand to do your fiduciary responsibility? That's what I think the argument is. Yes. Yes. We can get down to, we hope you send this to the officers and directors, because they've got to prepare and perform their fiduciary responsibilities. But that plays right into the cards of what we just heard. What do you say to that argument? What's your response? I'm sorry to interrupt you, sir. Clearly, the officers and directors believed that they were performing their fiduciary duties to the company when they entered the April 2002 emergency debt placement in the first place. So they obviously believed that they were performing their duties to the company and to its shareholders, et cetera, when they did that. Now, when the shareholders and the creditors to whom they now owe fiduciary duty because the company is in or near the zone of insolvency, when these people are saying, stop, it's time to stop this, it's time to meet with us, start closing down operations of your business, this takes it, I believe, beyond, this is not just simply saying keep doing what you think is best for the company. This is saying do what's best for us. Close down parts of your company if they're not sustaining themselves. Stop selling off the biggest asset of the company, which you pledged to us as security for our investment. Sit down at the table with our lawyers and our accountants and let's figure this thing out. The creditors in all of these letters are saying your duty to us now comes first. And you've got to sit down and do something about us and how we are being impacted. That's certainly, I think, dramatically different than what their duty would be to the company. Is service, is there any place that I can find that service is not read as or could not be read as? Stop doing what you're doing even if you think it's okay. Do it our way. I, yeah, I believe that is saying run the company the way we're asking you to do to maximize our investment. Do it our way. Yes, I think that's asking for a service. Yes, I believe that's the demand for a service. Absolutely. Well, I, how do I find that? Where do I find that? What law do I look at? Well, I don't think you're going to look for case law on that. I think, again, we go to the commonly understood terms. You know, the words demand and the words service are not defined in the policy application. They're not defined in the policy. And, of course, the application is a part of the policy. So we look to the popular and ordinarily understood meanings of those words. And I think that common knowledge would say that if I'm saying to you, I want you to court room my way to make it better for me, I'm asking you for a service. I think that would be commonly understood. You know, I think that you've just been led down the garden path and you didn't need to go there. They are asking for a service, which in light in the frame in which they're making the demand, they are actually doing exactly what your adversary says they're asking. They're asking to comply with their fiduciary duty. They're not saying, do it my way just because we want you to do it. They're saying, we want you to do it my way because I want you to do it and because your fiduciary duty requires that you do it. But that doesn't strike me as a defense to not answering the question. That tells me that's the underlying basis for the lawsuit that's going to come down the road after a while if you don't do it, which is why I think they had to answer the question by providing the letter. Yes, and of course, again, question. I'm glad you saw that the answer to that question was yes. Yes, of course I would. It was pretty straight. It was pretty straight. It was very, that was good. Thank you. And I do appreciate that. You made my trip from Chicago well worth it just for that. And certainly, I would again, though, certainly point out that question number 24 does use the word or. So we've got money or services. We think the letters cover both, but only one ground does need to be covered. And certainly, money is requested as well. I have no other questions. All right. Thank you. We request deferments. Would you like two minutes to respond? I would thank you for your indulgence. And I want to answer the Judge Smith's last question. If you just put two minutes on the clock, that would be great. Thank you. The answer to the question is there is a case, and the case is a bifidel. Okay. A bifidel is a case that says when you have a demand to officers and directors to perform your fiduciary duty, stop doing bad things, and do the things that we think are the right things, that is not a demand for services. That is the holding of a bifidel. And I would encourage the Court to take a look at it. It uses that word. It says this is not a demand for services. Number one. Number two, the bright line that we're talking about is someone's not going to be coming after you in the future. It's not a we're not talking about a future claim here. This is someone's coming after you right now. That's the bright line. What do you have to report? If someone's coming after you right now, you have to report it. But this application, and maybe it's a good idea for insurance companies to write an application that says some do, and we've cited cases to those that do, that say we're going to come after you in the future. You know, we want letters that say do the right thing or do this thing or we may come after you in the future. There are policy applications that say that. And this isn't one. Remember, let's get back to basics here. This is insurance law. The insurance company has the obligation to provide clear and unambiguous instructions or questions to the insured. If there's any doubt at all, if the insured has a reasonable interpretation of what he's being asked, the insured's reasonable interpretation controls. So the question really is, looking at this question 24, I'm the insured. Somebody's asking me whether in the context of an officer and director liability insurance policy, which as we know is not asking me if anybody's demanded that I make my car payment. It's demanding me if anybody is making a claim under the policy. Now, be careful how far you go down this because that was really the, if you will, the impetus for my question that I asked you before. The same officers and directors under which, in whose shoes you step, have said under oath that what you told us to do based on these letters was wrong. We had the question. We understood the letters were there. We were worried about it. And you told us to answer wrongly. Now, if you're going to put us in the idea or in the posture or in the thought process of those who filed that lawsuit, aren't what they alleged in that lawsuit under oath important to put us in their frame, in their thought process of how they felt or what they thought when they got that question? Well, as I said, that's not anything they said. That's what the bankruptcy trustee is saying. Well, I understand, but nonetheless. In a much larger lawsuit. We don't know. You can't say whether any value was given to that claim even. But the answer I don't think is yet. The answer is no. The answer is these officers and directors got an application that says tell us for reporting claim and litigation information for your policy so that we can judge where you are, what your claims are, whether you've received any demand for money or services, Mr. Officer and Mr. Director. Because we need to know that to provide to judge the coverage. It's not whether some bankruptcy trustee years later may say this is what we think the officers and directors may have intended. I appreciate your indulgence, Your Honor. Thank you. Thank you. Thank both sides for their argument. Uh, the admiral insurance sonic blue sonic blue cases submitted.
judges: Mills, Fletcher W. , Smith N. R.